**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

      **Plaintiff,**

          v.                  **CRIM. NO. 19-761 (RAM)**

(1) ELVIN EDGARDO CASTRO-PEREZ,
(2) KEVIN DE JESUS-TIRADO,

      **Defendants.**

---

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge.

    Pending before the Court is Defendant Elvin Castro-Perez's *Motion to Suppress* (Docket No. 28) and the Government's opposition thereto (Docket No. 32). Having reviewed the parties' arguments, the Court hereby **DENIES** the *Motion to Suppress*.

### I.    BACKGROUND

    On November 20, 2019, a *Criminal Complaint* was filed against Defendants Elvin Edgardo Castro-Perez ("Castro-Perez") and Kevin De Jesus-Tirado ("De Jesus-Tirado") for allegedly violating the following statutes: 18 U.S.C. § 922(g)(1) (Possession of a Firearm/Ammunition by a Prohibited Person (Felon)); 21 U.S.C. §§ 841(a)(1) (Possession with Intent to Distribute Controlled Substances (Marihuana)); and 18 U.S.C. § 924(c)(1)(A)[1] (Possession

---

[1] The Court notes that this offense applied exclusively to Jesus-Tirado. (Docket No. 8 at 3).

of a Firearm in Furtherance of a Drug Trafficking Crime). (Docket No. 1).

The *Criminal Complaint* was supported by Agent Freddy Ortiz's ("Agent Ortiz") affidavit.[2] (Docket No. 1-1). Agent Ortiz's affidavit provided that on November 11, 2019, Puerto Rico Police Department ("PRPD") received information indicating that a state fugitive wanted for murder was hiding around an old grocery store in Cidra, Puerto Rico. Id. ¶ 5. The tipster also stated that the fugitive would hang around with an individual known as Cain, a neighborhood the drug dealer. Id. According to the tipster, both the fugitive and Cain were heavily armed and used the following vehicles: a black Honda, a red Mazda, and a grey Cherokee. Id. Agent Ortiz averred that on November 18, 2019, PRPD Agents drove by the grocery store and observed an individual that fit the descriptions provided by the tipster of the fugitive sitting inside a red Mazda. Id. ¶ 6. Agent Ortiz's affidavit states that upon this observation:

> PRPD Agents exited the vehicle announcing themselves and approached a red in color Mazda, Model 3, bearing Puerto Rico License plate HKH-368. PRPD Agents observed an individual later identified as **Elvin Edgardo CASTRO-PEREZ on the driver seat with the car door opened. According to the PRPD Agents, when CASTRO-PEREZ noticed the presence of Police, he began to run**. PRPD Agents chased CASTRO-PEREZ and, while running, they observed

---

[2] Agent Ortiz is a Task Force Agent with the Bureau of Alcohol, Tobacco Firearms and Explosives. (Docket No. 1-1 at 1).

> when CASTRO-PEREZ threw what they believed was
> a black in color firearm. PRPD Agents
> continued to follow CASTRO-PEREZ and observed
> when CASTRO-PEREZ threw a cellphone.
> Subsequently, PRPD Agents arrested CASTRO-
> PEREZ. PRPD Agents read CASTRO-PEREZ his
> Miranda rights and he was escorted to the
> above-mentioned Mazda.

Id. ¶ 6. PRPD Agents allegedly seized the following from the floor

of the driver side of the Mazda:

- Two Glock magazines containing fourteen rounds
  of 45-caliber ammunition each (total amount of
  Twenty-eight (28) round of 45-caliber
  ammunition)
- Two (2) plastic baggies containing machinegun
  conversion devices (Chips)
- Three Hundred and seventy ($370.00) Dollars
  United States Currency
- One amber in color plastic case containing
  Nine (9) pills
- One amber in color plastic case containing
  Fifty-four (54) pills
- One amber in color plastic case containing
  seven (7) pills
- Five small plastic baggies containing a green
  leafy substance that field-tested positive to
  Marijuana.

Id. ¶¶ 6-7. The Agents also seized the following from the floor of

the passenger side of the Mazda:

- Three Hundred and forty-one (341) small plastic
  baggies containing green leafy substance that
  field-tested positive to Marijuana.

Id. ¶ 7.

Agent Ortiz's affidavit further describes that during this

operation, other PRPD Agents approached a blue Toyota Tacoma,

Puerto Rico License plate 837-816, and observed Jesus-Tirado on

the driver seat with the vehicle's door opened. Id. ¶ 8. Jesus-
Tirado exited the vehicle and the PRPD Agents allegedly observed
a firearm near the center console in plain view. Id. PRPD Agents
recovered a loaded Glock Pistol loaded with thirteen rounds of .45
caliber ammunition, forty-five rounds of .45 caliber ammunition,
and various bags containing a green leafy substance that field-
tested positive to marijuana. Id.

On December 4, 2019, a Grand Jury returned a five-count
Indictment against Castro-Perez and Jesus-Tirado. (Docket No. 8).
Castro-Perez was charged with Counts One, Two and Three,
specifically violations of 21 U.S.C. §§ 841(a)(1) (Possession with
Intent to Distribute Controlled Substances (Marihuana)); 18 U.S.C.
§ 922(g)(1) (Possession of a Firearm/Ammunition by a Prohibited
Person (Felon)); and 18 U.S.C. § 922(o) (Illegal Possession of a
Machine Gun). Id. at 1-4.

Defendant Castro-Perez subsequently filed a *Motion to
Suppress* contending that the warrantless search and seizure
violated his Fourth Amendment rights. (Docket No. 28). Castro-
Perez argues that the search was unlawful because: (1) the law
enforcement officers did not have probable cause to believe that
contraband would be found in the vehicle; and (2) he was not within
reaching distance of the passenger compartment at the time of the
search of the vehicle. Id. at 5.

The Government filed a *Response in Opposition to Defendant's Motion to Suppress Evidence* arguing that Defendant failed to establish a reasonable expectation of privacy. (Docket No. 32). Additionally, the Government maintains that, in the alternative, the items were lawfully seized from Defendant's vehicle "pursuant to a variety of doctrines, including but not limited to the plain view exception, the automobile exception, and the inevitable discovery rule pursuant to an inventory search." Id. at 2.

## II.   APPLICABLE LAW

### A. Standing

The Fourth Amendment to the United States Constitution protects individuals from "unreasonable searches and seizures." U.S. CONST. amend. IV. However, this protection only extends to "those places and interests in which the defendant has a reasonable expectation of privacy." United States v. Lewis, 40 F.3d 1325, 1333 (1st Cir. 1994) (citing United States v. Cruz Jiménez, 894 F.2d 1, 5 (1st Cir. 1990). Thus, "an expectation of privacy is a threshold standing requirement that a defendant must establish before a court can proceed with any Fourth Amendment analysis." Lewis, 40 F.3d at 1333. This means that before the Court can reach the merits of a suppression challenge under the Fourth Amendment, "**the defendant carries the burden of establishing that he had a reasonable expectation of privacy** with respect to the area searched or […] the items seized." United States v. Lipscomb, 539 F.3d 32,

35-36 (1st Cir. 2008) (citing United States v. Salvucci, 448 U.S.
83, 91-92 (1980)) (emphasis added).

    The standing to challenge "an allegedly illegal search or
seizure […] does not automatically devolve upon every accused."
United States v. Aguirre, 839 F.2d 854, 856 (1st Cir. 1988)
(quoting United States v. Salvucci, 448 U.S. 83, 90-91 (1980)).
Instead, standing to challenge an allegedly illegal search or
seizure "is highly contextual, consisting of general guidelines to
distinguish permissible police interference from unconstitutional
government intrusion." United States v. Agosto-Pacheco, 2020 WL
4937791, *3 (D.P.R. 2020) (citing United States v. Almeida, 748
F.3d 41, 47 (1st Cir. 2014)).

    The Supreme Court has developed "a two-part test for
analyzing the expectation question: first, whether the movant has
exhibited an actual, subjective, expectation of privacy; and
second, whether such subjective expectation is one that society is
prepared to recognize as objectively reasonable." United States v.
Rheault, 561 F.3d 55, 59 (1st Cir. 2009) (citing Smith v. Maryland,
442 U.S. 735, 740, (1979)). *See also* Katz v. United States, 389
U.S. 347, 88 (1967). In other words, courts must determine "whether
or not the individual **thought of the place (or the article) as a
private one, and treated it as such**." Aguirre, 839 F.2d at 857. If
this burden is met, then courts must "look to whether or not the
individual's expectation of confidentiality was justifiable under

the attendant circumstances." Id. When conducting this inquiry, factors such as "ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; [and] the totality of the surrounding circumstances[]" are relevant. Id. at 856-57.

## B. Abandoning property entails forfeiting any reasonable expectation of privacy

"It is well settled that if a defendant abandons property while he is being pursued by police officers, he forfeits any reasonable expectation of privacy he may have had in that property." United States v. Soto-Beniquez, 356 F.3d 1, 36 (1st Cir. 2003) (citing Abel v. United States, 362 U.S. 217, 241 (1960)). In the absence of a reasonable expectation of privacy, police may search abandoned property without a warrant. See United States v. Lewis, 921 F.2d 1294, 1302 (D.C. Cir. 1990).

To establish abandonment, "the government must establish by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized." United States v. Basinski, 226 F.3d 829, 836 (7th Cir. 2000) (citing United States v. Stephens, 206 F.3d 914, 917 (9th Cir. 2000)).

Whether the accused "harbor[ed] a desire to later reclaim an item" is irrelevant. Id. Instead, courts only need to examine "the

external manifestations of [their] intent as judged by a reasonable person possessing the same knowledge available to the government agents." Id. Therefore, "[t]he accused need not have abandoned the searched item in the strict property sense, where an intent to relinquish ownership must be shown; **merely an intent voluntarily to relinquish his privacy interest is sufficient**." United States v. Barlow, 17 F.3d 85, 88 (5th Cir. 1994) (citations omitted) (emphasis added). See also Lewis, 921 F.2d at 1302 ("abandonment for purposes of the Fourth Amendment differs from abandonment in property law; here, the analysis examines the individual's reasonable expectation of privacy, not his property interest in the item.").

**C. The right to an evidentiary hearing on a motion to suppress**

Lastly, it must be remembered that there is "no presumptive right to an evidentiary hearing on a motion to suppress." United States v. Cintron, 724 F.3d 32, 36 (1st Cir. 2013) (citation omitted). Generally, evidentiary hearings are only required "if the movant makes a **sufficient threshold showing that material facts are in doubt or dispute**, and that such facts cannot reliably be resolved on a paper record." Id. (quoting United States v. Francois, 715 F.3d 21, 32 (1st Cir. 2013)) (emphasis added). "Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief." Id.

When challenging a *warrantless* search, the defendant "must
make a **sufficient threshold showing that no exception to the
warrant requirement applied** to the search" in order to obtain a
hearing. Id. (emphasis added). Thus, defendants have the burden
to "allege facts, 'sufficiently definite, specific, detailed, and
nonconjectural, to enable the court to conclude that a substantial
claim is presented.'" United States v. Agosto-Pacheco, 2019 WL
4566956, at *6 (D.P.R. 2019) (quoting United States v. Calderon,
77 F.3d 6, 9 (1st Cir. 1996)).

### III. DISCUSSION

Defendant Castro-Perez has not established he has standing to
challenge the search and seizure in controversy. Importantly,
Castro-Perez's *Motion to Suppress* was unaccompanied by an
affidavit or declaration under penalty of perjury. (Docket No.
28). *See* Calderón, 77 F.3d at 9 (upholding a district court's
refusal to hold an evidentiary hearing where defendant provided no
affidavits or other evidence to support his motion to suppress).[3]
Even despite this, the allegations in his *Motion to Suppress* do

---

[3] Accordingly, although Castro-Perez claimed in his *Motion to Suppress* that the
vehicle is his, he has not presented any evidence to that effect. (Docket No.
28). As discussed above, ownership is a key factor when assessing a defendant's
subjective expectation of privacy. In Aguirre, the First Circuit held that the
defendant had not "exhibited the slightest subjective expectation of privacy
vis-à-vis the vehicle" that was searched because there was no evidence that the
defendant "owned or leased the [vehicle] or that it was registered to him […]
[nor] that he even possessed keys to the vehicle or had used it on prior
occasions." Aguirre, 839 F.2d at 857.

not evince a subjective expectation of privacy over the red Mazda or its contents.

Defendant Castro-Perez did not controvert the key facts outlined in Agent Ortiz's Affidavit in support of the *Criminal Complaint*. Specifically, he **does not deny** that upon being approached by PRPD Agents while he was in front of a grocery store, he exited the vehicle he was inside of (*i.e.* the red Mazda, Model 3, Puerto Rico License plate HKH-368) and ran away, leaving the vehicle behind.

Circuit and District courts alike have repeatedly held that **running away from a vehicle**, thereby leaving it behind, to avoid being apprehended **constitutes abandonment of the automobile and forfeiture of any expectation of privacy**. *See* United States v. Lynch, 290 F. Supp. 2d 490, 497 (M.D. Pa. 2003), aff'd, 214 F. App'x 248 (3d Cir. 2007)(concluding that search was lawful because defendant abandoned his vehicle by "flee[ing] the car on foot, leaving the door wide open and the motor and headlights running" while "police officers in police cars looked on."); United States v. Vasquez, 635 F.3d 889 (7th Cir. 2011) (finding that the motion to suppress was properly denied because the defendant abandoned his car after speeding away when police attempted to arrest him and then running away from the vehicle after he parked it in a nearby Walmart parking lot); United States v. Walton, 538 F.2d 1348, 1354-55 (8th Cir. 1976) (maintaining that a warrantless

search and examination of a vehicle did not violate the Fourth
Amendment because the defendant had fled from and abandoned the
car when a police officer appeared on the scene); United States v.
Edwards, 441 F.2d 749, 751 (5th Cir. 1971) (holding that the
defendant had no reasonable expectation of privacy with respect to
his automobile because his "right to Fourth Amendment protection
came to an end when he abandoned his car to the police, on a public
highway, with engine running, keys in the ignition, lights on, and
fled on foot."); United States v. Bailey, 2009 WL 524730, at *2
(D. Mass. 2009)("[W]ith the police in pursuit, Bailey jumped from
a moving SUV and fled, leaving the SUV to lurch onto a sidewalk,
with the door still open, the engine still running, and the keys
in the ignition […] abandon[ing] the SUV and forfeit[ing] any
reasonable expectation of privacy in the SUV.").

In the case at bar, Castro-Perez has not contradicted the
Government's evidence establishing that he fled from the vehicle
that was subsequently searched. Nor has Defendant proffered *any*
facts to show that he treated the vehicle as a private
place. *See* Aguirre, 839 F.2d at 857. **The totality of the
circumstances and Castro-Perez's own actions show his intent to
"voluntarily relinquish his privacy interest" in the vehicle.** *See*
Barlow, 17 F.3d at 88. Thus, given that Defendant has not exhibited
an actual, reasonable, expectation of privacy regarding the
searched vehicle, the Court must conclude that he lacks the

threshold standing to file the present *Motion to Suppress*. *See*
<u>Lewis</u>, 40 F.3d at 1333.

### IV. CONCLUSION

For the reasons set forth herein, Defendant's *Motion to Suppress* (Docket No. 28) is **DENIED**. The Speedy Trial Act remains tolled as to all defendants while co-defendant Kevin De Jesus-Tirado's Motion to Suppress (Docket No. 19) remains under consideration. *See* 18 U.S.C. Sec. 3161(h)(1)(D) & (h)6); <u>United States v. García-Baez</u>, 2019 WL 2553621 (D.P.R. 2019) at *6 (Holding that the Speedy Trial Act remained tolled for defendant while co-defendant's motion to suppress was pending).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of February 2021.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge